**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF ILLINOIS**

FILED

AUG 24 2026

CLERK, US BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

In re:

MARCUS KOGER,

Debtor.

Chapter 7

Case No. 24-30943

# DEBTOR'S REPLY IN SUPPORT OF MOTION TO ENFORCE DISCHARGE INJUNCTION

**TABLE OF CONTENTS**


I. INTRODUCTION

II. THE DOJ'S OFFICIAL "STRICTLY UNDER TITLE 26" STATEMENT AND THE GOVERNMENT'S INCONSISTENT RECORD

III. THE DOJ'S CERTIFICATION THAT § 3613(c) WAS "SATISFIED"

IV. THE PROCEDURAL EFFECT OF § 523(a)(13) AND THE ABSENCE OF A PRE-DISCHARGE DETERMINATION

V. THE IRS'S POSITION REQUIRES RECONCILIATION

VI. "SELF-EXECUTING" NONDISCHARGEABILITY DOES NOT ANSWER THE THRESHOLD QUESTION

VII. THE $15,706.37 IN INTEREST/ADDITIONS REQUIRES A LAWFUL STATUTORY BASIS

VIII. ADDITIONAL RESPONSES TO THE GOVERNMENT'S ARGUMENTS

VI. A. Section 7433 Governs Any Damages Remedy Against the IRS

VII. B. Sections 3613 and 6201 Must Be Reconciled With DOJ's Certificate

VIII. C. Factual Correction to the Government's Response

IX. D. Section 6201(a)(4) Does Not Answer the Certificate Question

E. The Government's Conflicting Statements Concerning the $15,706.37

F. The Government's Alternative § 523(a)(1)(C) Theory

IX. CONCLUSION

## I. INTRODUCTION

The IRS's Response (ECF No. 62) reveals the fundamental weakness of its position: the IRS cannot defend its conduct on the merits, so it attempts to recharacterize the debt post-discharge. The IRS's 20-page brief conspicuously fails to address the four dispositive facts that bind the government:

(1) The U.S. Department of Justice's official written determination that 'the judgment was entered strictly under title 26 of the US code';

(2) The DOJ's formal certification that the requirements of 18 U.S.C. § 3613(c) were 'satisfied' with respect to the judgment and its subsequent release of the federal lien securing the criminal restitution obligation;

(3) The IRS's judicial admission in its sworn Proof of Claim certifying $285,900.90 as UNSECURED debt; and

(4) The IRS did not obtain a pre-discharge determination concerning the disputed balance. Although § 523(a)(13) and § 523(a)(1)(C) are not governed by § 523(c)(1)'s deadline, that procedural point does not establish that the balance now being collected actually satisfies either exception.

**These facts create the threshold questions the Government's Response must answer: what legally enforceable obligation remained after DOJ's § 3613(c) certification and release; what legal character that obligation possessed at the time of my April 8, 2025 discharge; and what statutory authority permits collection of each amount now shown on the IRS account. These four facts are undisputed and dispositive. The IRS's Response does not—and cannot—explain them away.**

## II. THE DOJ'S OFFICIAL "STRICTLY UNDER TITLE 26" STATEMENT AND THE GOVERNMENT'S INCONSISTENT RECORD

### A. The DOJ's Official Written Statement Must Be Reconciled With the Government's Present Position

The IRS dismisses the DOJ's November 2, 2022 letter by claiming it was 'simply an explanation for why collection responsibility was transferring' and that 'to the extent that the October 31, 2022, letter conflicts with the Criminal Judgment, the Criminal Judgment and Plea Agreement control.' ECF No. 62 at 11. This argument fails for multiple reasons:

**First, the DOJ letter is not a judicial amendment of the criminal judgment, and I do not ask the Court to treat it as one. It is nevertheless an official statement from the prosecuting office concerning the same judgment and the transfer of collection responsibility. Because the Government now advances a characterization materially different from the language used by DOJ, the letter is evidence the Government must reconcile with the judgment, the later § 3613(c) Certificate, and the IRS's subsequent account treatment.**

Second, the criminal judgment and plea agreement contain Title 18 restitution provisions, while DOJ later stated that "the judgment was entered strictly under title 26 of the US code," stated that its office would no longer enforce collections, and deferred collection to the IRS. I do not contend that the later letter, standing alone, rewrote the judgment. I contend that the Government cannot rely exclusively on the original Title 18 characterization while refusing to explain the legal effect of its own later statements and §

3613(c) certification. The Court should determine what obligation remained after those actions and then apply the Bankruptcy Code to that obligation.

*I therefore do not rely on the rule of lenity as an independent rule for deciding dischargeability. United States v. Santos, 553 U.S. 507, 514 (2008), applied lenity to ambiguity in a criminal statute. The present dispute is principally one of statutory classification and bankruptcy effect. My argument rests instead on the text of §§ 3613(c), 6201(a)(4), 523(a)(13), and 523(a)(1)(C), together with the Government's own documents and account history.*

The plea agreement and judgment make the Government's later documents more—not less—important. The plea agreement invoked 18 U.S.C. § 3663A, and the judgment used Title 18 restitution provisions. DOJ later issued a § 3613(c) Certificate stating that the statutory requirements "have been satisfied with respect to the judgment enumerated below together with all statutory additions" and that the lien "has thereby been released." The Government must explain how those later official actions affected the continuing enforceability of the Title 18 obligation it now invokes.

I do not rely upon the passage of time as a basis for extinguishing the Government's enforcement rights. My argument rests instead upon the Government's affirmative official acts and representations. DOJ issued its § 3613(c) certification concerning the judgment and released the resulting lien; the IRS subsequently administered the account in a manner reflected by its own official records; and the Government now advances a position that must be reconciled with those prior actions. These are not allegations based merely upon Government delay or inaction. They are affirmative acts contained in the Government's own record, and their legal effect must be

addressed before the Government can establish that the obligation it now seeks to collect remained an enforceable Title 18 restitution obligation after those events.

The IRS's post-discharge actions likewise do not, by themselves, create dischargeability. The releases of the Title 26 liens, the discharge notation, and the write-off are nevertheless relevant because they show how the agency actually administered the account before reversing course. Those actions strengthen the need for a precise determination of what debt remained and why it was legally collectible after April 8, 2025.

New Hampshire v. Maine, 532 U.S. 742, 749–51 (2001), recognizes judicial estoppel as a doctrine designed to protect the integrity of the judicial process against clearly inconsistent litigation positions. The Government's present position should therefore be examined under that doctrine. Its present assertion that the disputed balance remained continuously enforceable as Title 18 restitution must be reconciled with the Government's prior official representations, its § 3613(c) certification concerning the judgment, and the positions reflected in the bankruptcy record. To the extent the Court finds that the Government's present position is clearly inconsistent with a position previously presented to and accepted by a court, and that allowing the inconsistent position would confer an unfair advantage or impose an unfair detriment, I respectfully request that the Court apply judicial estoppel and preclude the Government from asserting the inconsistent position. Even if the Court concludes that every requirement for judicial estoppel is not established, the Government's inconsistent official positions and actions remain highly probative of the threshold issue before this Court: the legal character and continuing enforceability of the obligation the IRS now seeks to collect.

Third, the IRS's conduct shows that the account was administered through Title 26 mechanisms: restitution-based assessments under § 6201(a)(4)(A), Title 26 NFTLs, and the disputed $15,706.37 in interest or additions. Daugerdas confirms that use of Title 26 collection machinery does not itself convert qualifying restitution into an ordinary tax. The significance here is therefore not "conversion" by procedure; it is whether a qualifying restitution obligation still existed after DOJ's later certification and release, and whether every additional amount the IRS imposed was independently authorized.

Fourth, the Government's present position requires the Court to reconcile documents generated by the same sovereign. The prosecuting office knew the judgment and nevertheless issued the later letter and § 3613(c) Certificate. The Government may argue about the legal effect of those documents, but it cannot make their language disappear.

**B. The Proof of Claim Is Relevant Account Evidence, Not a Conclusive Admission of Dischargeability**

The IRS's Proof of Claim classified the asserted claim as unsecured. That classification is relevant to the history of the account, but unsecured status does not itself establish dischargeability. The stronger point is cumulative: the Proof of Claim must be considered together with DOJ's Certificate, the IRS's discharge notation, lien releases, write-off, later reversal, and the statutory basis now asserted for collection.

**Accordingly, I do not argue that the absence of a nondischargeability notation on the Proof of Claim waived § 523(a)(13). The issue is whether the particular obligation now being collected actually remained a payment of an enforceable Title 18 restitution order after the later DOJ actions.**

Bontrager v. Commissioner, 151 T.C. 213 (2018), does not establish that filing an unsecured proof of claim waives nondischargeability, and I do not rely on it for that proposition. The Proof of Claim is relevant here as one item in the Government's own account history, not as a standalone waiver.

Nor do I contend that assessment under § 6201(a)(4) "converts" criminal restitution into ordinary civil tax debt. Daugerdas v. Commissioner, No. 25-1055 (7th Cir. Mar. 30, 2026), confirms that the IRS may create a parallel restitution-based assessment and use Title 26 collection procedures for **qualifying restitution**. My argument is different: § 6201(a)(4) presupposes qualifying restitution under an order **pursuant to 18 U.S.C. § 3556**; it does not itself answer what remained after DOJ's later § 3613(c) certification.

More fundamentally, the Government's reliance on 26 U.S.C. § 6201(a)(4) assumes the continued existence and character of the amount being collected *as restitution under a Title 18 order.* Section 6201(a)(4) authorizes the IRS to assess and collect *'the amount of restitution under an order pursuant to section 3556 of title 18'; it does not independently create a new criminal restitution judgment.* Here, however, the DOJ—the agency possessing authority over the Title 18 restitution judgment—subsequently certified that *'the requirements of 18 U.S.C. § 3613...have been satisfied with respect to the judgment'* and released the corresponding § 3613(c) lien. (Exhibit B). Accordingly, *before the Government may characterize the transferred balance as continuing criminal restitution under § 6201(a)(4), it must establish what remained of the Title 18 obligation following DOJ's certification and release.* Section 3613(c) provides that the lien continues ***UNTIL*** the liability is satisfied, remitted, set aside, or terminated under subsection (b). *An*

*'administrative transfer to IRS' is not among those expressly identified conditions.* If DOJ's certification legally reflected satisfaction, remission, setting aside, or termination of the Title 18 liability, *§ 6201(a)(4) cannot be used to recreate a criminal restitution obligation that no longer existed in that form.* The IRS has not—and cannot—establish that a valid Title 18 restitution obligation remained following DOJ's release of the § 3613(c) lien. Without that predicate, the Government's reliance on § 6201(a)(4) fails.

The $15,706.37 presents a separate issue. Klein v. Commissioner, 149 T.C. 341, 359–62 (2017), holds that § 6201(a)(4), by itself, does not authorize the IRS to add § 6601 underpayment interest or § 6651(a)(3) failure-to-pay additions to a restitution-based assessment. The Government therefore must identify the precise statutory source of the $15,706.37 rather than treating every amount appearing on the account as restitution.

If the Court determines that qualifying Title 18 restitution remained after DOJ's certification, § 523(a)(13) may apply to payments of that restitution. If the Court instead determines that the balance being collected is a separate Title 26 civil tax liability, the Government must establish the Bankruptcy Code provision that excepted that particular liability from my April 8, 2025 discharge. Those are alternative statutory paths; neither may be assumed.

The absence of a pre-discharge adversary proceeding is therefore not dispositive under § 523(a)(13) or § 523(a)(1)(C), but neither is the label "self-executing." The Government still must prove that the debt now being collected falls within the exception it invokes.

## III. THE DOJ'S CERTIFICATION THAT § 3613(c) WAS "SATISFIED"

The AUSA states on page 11 that I claim 'the lien release provided by the US Attorney's office as part of the transfer of collection responsibility from the DOJ to the IRS actually

satisfied the entire restitution.' This mischaracterizes my position. I do not claim that a ministerial transfer of collection responsibility satisfies restitution. I point to the specific statutory language the DOJ used when it released its lien.

The Government's proposed separation between the § 3613(c) lien and the § 3613(b) liability is undermined by persuasive published appellate authority interpreting these very provisions. In *United States v. Joseph*, 102 F.4th 686, 689–90 (5th Cir. 2024), the Fifth Circuit rejected an argument that subsections (b) and (c) should be construed separately. Examining the statutory text, the court explained that subsection (c) expressly references subsection (b) and observed that "Congress has used 'lien' and 'liability' interchangeably," which provided "further indication that reading the two subsections together is the correct interpretation." *Id.* at 690. The Fifth Circuit further reasoned that the two provisions "could be read as coterminous as to termination." *Id.* Although *Joseph* addressed the duration of a restitution lien rather than the precise effect of the DOJ Certificate presented here, its statutory analysis directly contradicts the Government's premise that the lien and underlying liability must be treated as wholly separate concepts under § 3613. Here, that relationship is even more significant because DOJ did not merely file a generic release: it affirmatively certified that "the requirements of section 3613(c) … have been satisfied with respect to the judgment" and that the lien had "thereby been released." (Exhibit B). Thus, the Government must reconcile its present assertion that the liability remained unchanged with both the language of its own Certificate and § 3613's interconnected treatment of lien and liability.

The DOJ's Certificate of Release of Federal Tax Lien states verbatim: "I hereby certify that as to the following named debtor the requirements of section 3613(c) of title 18 of the US code have been **satisfied** with respect to the **judgment** enumerated below together with all

statutory additions; and that the **lien for this judgment and statutory additions has thereby been released**." (Exhibit B) (emphasis added).

Section 3613(c) provides that a **restitution lien continues until the liability is satisfied**, remitted, set aside, or terminated under § 3613(b). 18 U.S.C. § 3613(c). Here, notwithstanding the existence of an unpaid balance, the Department of Justice issued an official Certificate expressly certifying that "the requirements of section 3613 … have been satisfied with respect to the judgment" and that the lien "has thereby been released."

The United States should therefore be required to identify which statutory condition under § 3613 authorized that certification and release. If the Government maintains that the underlying Title 18 liability remained fully enforceable notwithstanding its certification, it must reconcile that position with the language of its own Certificate and with the subsequent transfer of collection to the IRS. The DOJ affirmatively certified that § 3613(c)'s requirements were satisfied. If the Government nevertheless contends that the underlying Title 18 restitution obligation remained fully enforceable and unchanged after that certification and release, it must identify the statutory condition or authority that permits both propositions to be true and reconcile that explanation with the language DOJ actually used in the Certificate.

It is critical to note what judgment the DOJ certified as satisfied. The Certificate states the requirements of § 3613(c) were 'satisfied with respect to the judgment enumerated below.' There is only one criminal judgment in this case: the July 17, 2017 judgment in Case No. 3:16-CR-30144-SMY ordering restitution of $172,770.08 to the Internal Revenue Service. The DOJ did not certify that some portion or component was satisfied—it certified that the requirements of § 3613(c) were satisfied 'with respect to the judgment.' Under the plain language of § 3613(c), if the requirements for maintaining the lien were satisfied, then the underlying liability was either

paid in full, remitted, set aside, or otherwise terminated. The Government must identify which of these statutory conditions occurred to authorize the DOJ's certification and lien release.

The AUSA argues on page 12 that 'a lien release does not release the liability' and that 'the statement in the DOJ lien release that "the requirements of section 3613(c)...have been satisfied" only relates to the lien and not the liability, since § 3613(c) only addresses the lien related to an order of restitution.' This argument is self-defeating.

Section 3613(c) provides that a Title 18 restitution lien 'shall continue until the liability is satisfied, remitted, set aside, or is terminated under subsection (b).' 18 U.S.C. § 3613(c). Under the plain language of the statute, 3613 (c) expressly identifies four conditions governing the duration of the lien (1) The liability is SATISFIED (paid in full); (2) The liability is REMITTED (forgiven); (3) The liability is SET ASIDE (court order canceling it); or (4) The liability is TERMINATED under § 3613(b) (20-year expiration).

The Certificate therefore creates a serious statutory question, but I do not ask the Court to adopt the categorical proposition that every release of a § 3613(c) lien automatically extinguishes the underlying judgment. I ask the Court to interpret this particular Certificate—whose text expressly says the requirements of § 3613(c) "have been satisfied with respect to the judgment"—against § 3613(c)'s own duration language and the Government's admitted reason for the release.

Critically, the AUSA's own characterization of the lien release exposes the fatal flaw in the Government's position. The AUSA acknowledges that the DOJ released the lien *'as part of the transfer of collection responsibility from the DOJ to the IRS.'* (Response at 11). But *'transfer of collection responsibility to the IRS'* is *not* one of the four statutory conditions listed in §

3613(c). The statute provides that a restitution lien *'shall continue until the liability is satisfied, remitted, set aside, or is terminated under subsection (b).'* 18 U.S.C. § 3613(c). *Nowhere in § 3613 does the statute authorize releasing a lien for 'administrative transfer to another agency.'*

The Government's stated reason—transfer of collection responsibility to the IRS—does not appear among the events described in § 3613(c). That does not permit me simply to declare the judgment extinguished; it does require the Government to identify the statutory mechanism by which DOJ could make the quoted certification and release while the same Title 18 restitution obligation allegedly remained fully enforceable.

Creel v. Commissioner, 419 F.3d 1135 (11th Cir. 2005), should be used narrowly. Creel involved a criminal tax case, restitution payments, and a later dispute over civil tax liabilities. The Eleventh Circuit affirmed the Tax Court's conclusion that, under the particular plea agreement and payment history there, restitution payments satisfied the civil tax liabilities for the years at issue. Creel did not construe a § 3613(c) Certificate like the one presented here and did not announce a general rule that every government lien release extinguishes the underlying liability.

Creel is therefore useful only by analogy: it demonstrates that the legal effect of restitution payments and government treatment of related tax liabilities turns on the governing documents and the particular statutory relationship between the obligations. It does not supply the dispositive rule in this case.

My argument under § 3613(c) must stand on the text of that statute and DOJ's Certificate itself. The Certificate expressly invokes § 3613(c), states that its requirements "have been satisfied with respect to the judgment enumerated below together with all statutory additions,"

and states that the lien "has thereby been released." The Court should require the Government to explain the legal consequence of that language.

Section 3613(c) states that the lien continues for the period prescribed by the statute and until the liability is satisfied, remitted, set aside, or terminated under subsection (b). The Certificate's express reference to satisfaction of § 3613(c)'s requirements is therefore materially different from a bare administrative release that says nothing about the statute. The question is what DOJ certified had occurred and what, if anything, remained enforceable afterward.

Daugerdas confirms that § 6201(a)(4) authorizes a parallel IRS assessment of qualifying restitution and does not require the IRS to follow the criminal court's payment schedule. But Daugerdas did not involve a prior DOJ Certificate stating that § 3613(c)'s requirements had been satisfied with respect to the judgment. It therefore does not answer the certificate question presented here.

The AUSA acknowledges that the DOJ released the lien 'as part of the transfer of collection responsibility from the DOJ to the IRS.' (Response at 11). The Government's characterization of this as a mere administrative 'transfer' does not explain why the DOJ used the specific statutory language of § 3613(c), certifying that 'the requirements of section 3613(c)...have been satisfied with respect to the judgment.' If this were simply a transfer of collection responsibility, the DOJ would not have needed to certify that § 3613(c) requirements were satisfied—the statute provides no mechanism for releasing a lien based on a transfer. The DOJ's use of the § 3613(c) certification language means the DOJ determined that one of the four statutory conditions (satisfied, remitted, set aside, or terminated) had occurred. The Government

**must** identify which condition the DOJ found to exist when it made that certification nearly four years ago.

Once the Government relies on § 523(a)(13) and § 6201(a)(4) to continue collection, it bears the burden of establishing the facts and statutory predicates necessary for those provisions to apply to the disputed balance. The Court should require the Government to identify what qualifying Title 18 restitution obligation remained after the Certificate and how the amounts now collected correspond to it.

I do not contend that a currently recorded § 3613(c) lien is an indispensable prerequisite to every form of restitution enforcement. The narrower point is that the Government must reconcile the release and the Certificate with its assertion that the same restitution obligation continued unchanged. Section 6201(a)(4) gives the IRS substantial collection authority over qualifying restitution; it does not resolve the legal effect of DOJ's earlier certification.

The AUSA attempts to avoid this conclusion by arguing on page 17 that 18 U.S.C. § 3664(m) permits agencies other than DOJ to enforce restitution, citing United States v. Lemberger, 673 F. App'x 579, 580 (7th Cir. 2017) and Stacy v. United States, 70 F.4th 369, 373 (7th Cir. 2023). This argument backfires spectacularly.

Lemberger upheld seizure of inmate funds where an outstanding restitution obligation and the Government's lien were undisputed. 673 F. App'x at 580. The case confirms broad enforcement authority while restitution remains due; it did not address the effect of a later § 3613(c) certification and release like the one here.

Accordingly, Lemberger does not decide this case. Its enforcement setting lacked the factual and legal event at the center of my motion: DOJ's express certification that § 3613(c)'s requirements had been satisfied with respect to this judgment.

The Government may rely on Lemberger to show that federal law supplies powerful restitution remedies. I rely on the distinction: those remedies presuppose an enforceable restitution obligation. The Court must first determine the status of this obligation after the Certificate.

The AUSA argues on page 16 that the 'notwithstanding' clause in 18 U.S.C. § 3613(a) means 'no section of the Bankruptcy Code can prevent the United States from collecting restitution debts,' and concludes that 'the United States [can enforce] a restitution order due to the *plain language of 18 U.S.C. § 3613(a), (e).*' (Response at 16-17) (emphasis added). This argument is remarkable for what it *omits*. The AUSA invokes the 'plain language' of § 3613(a) and (e), but conspicuously fails to mention the plain language of § 3613(c)—the very subsection that the DOJ certified as 'satisfied' when it released the lien.

Section 3613(c)'s text remains relevant because DOJ expressly invoked it in the Certificate. The Government cannot answer the Certificate issue merely by citing § 3613(a)'s broad enforcement language; it must explain how the specific § 3613(c) certification affected the judgment and lien.

Read together, subsections (a), (b), and (c) protect vigorous enforcement of valid restitution while also defining the statutory duration of liability and liens. My position does not ask the Court to ignore § 3613(a); it asks the Court to give effect to the subsection DOJ itself cited when it certified satisfaction and released the lien.

Partida v. U.S. Department of Justice, 862 F.3d 909, 912–17 (9th Cir. 2017), reinforces the breadth of § 3613(a)'s "notwithstanding" clause against bankruptcy restrictions when the Government is enforcing a valid restitution order. Partida did not involve a DOJ § 3613(c) Certificate stating that the statutory requirements had been satisfied. I therefore distinguish Partida on that ground rather than treating it as authority that lien release itself extinguishes restitution.

## IV. THE PROCEDURAL EFFECT OF § 523(a)(13) AND THE ABSENCE OF A PRE-DISCHARGE DETERMINATION

The Government is correct on one procedural point: § 523(a)(13) is not among the exceptions listed in § 523(c)(1) that require a creditor to obtain a pre-discharge determination within Rule 4007(c)'s deadline. I therefore withdraw any argument that the IRS lost § 523(a)(13) solely because it did not file an adversary proceeding by June 9, 2025.

That concession does not decide the merits. Section 523(a)(13) applies only to a debt "for any payment of an order of restitution issued under title 18." The Government must still establish that the particular balance now being collected remained such an obligation after DOJ's later certification and release.

The absence of a pre-discharge determination remains part of the procedural history, but it is not a substitute for the statutory analysis. If the disputed balance is Title 18 restitution, § 523(a)(13) may operate without a prior adversary judgment. If the balance is instead a civil tax liability, the Government must establish the specific exception—such as § 523(a)(1)(C)—that applies to that liability.

The IRS's discharge notation, lien releases, and write-off do not themselves create dischargeability where Congress has excepted a debt from discharge. They remain relevant evidence of the agency's prior treatment of the account and of the reasonableness of later collection if this Court determines that any portion of the balance was discharged.

## V. THE IRS'S POSITION REQUIRES RECONCILIATION

The Government's position contains material tensions that should be resolved by identifying the statutory character and source of each amount rather than by treating every account entry as either wholly criminal restitution or wholly civil tax debt.

### A. Restitution Is Not a Tax, Even Though § 6201(a)(4) Uses Tax Collection Procedures

The IRS repeatedly admits the debt is NOT a tax:

- 'restitution-based assessments are not taxes' (ECF No. 62 at 6);
- 'restitution-based assessments are not tax liabilities' (ECF No. 62 at 9);
- 'The restitution obligation is not a civil tax liability' (ECF No. 62 at 9, quoting Klein).

Yet the IRS:

- Made assessments under 26 U.S.C. § 6201(a)(4)(A);
- Added **$15,706.37** in civil tax penalties for late payment;
- Filed Notices of Federal Tax Lien under 26 U.S.C. § 6321;
- Sent CP71C tax collection notices;
- Used Title 26 civil tax collection procedures.

**Daugerdas forecloses the argument that use of Title 26 assessment, NFTL, and collection procedures alone converts restitution into an ordinary tax. The legally significant distinction is between qualifying restitution principal that § 6201(a)(4) permits the IRS to assess and collect and separate interest, penalties, or additions that require their own statutory authorization.**

**B. The $15,706.37 Interest/Addition Issue**

The Government states that the interest and penalties were "already abated," but elsewhere states that the IRS "initiated an abatement of $15,706.37, which is currently processing." Those are materially different factual assertions. More importantly, the amount remained on my account approximately three weeks later, so the issue was not moot on August 21, 2026.

First, the $15,706.37 was still present on the IRS account as of August 21, 2026 when I called. The IRS claims it 'initiated' an abatement that is 'currently processing,' but has provided no evidence that the abatement is complete or that it has been approved.

**The criminal judgment fixed the restitution principal at $172,770.08. If the $15,706.37 consists of § 6601 underpayment interest or § 6651(a)(3) failure-to-pay additions generated solely from the restitution-based assessment, Klein holds that § 6201(a)(4) does not authorize those amounts. The Government should identify the exact code sections and accounting entries supporting the charge.**

The timing of the proposed abatement does not itself prove that the restitution principal was discharged. It does, however, make the legal source and present status of the $15,706.37 a live accounting issue that should be resolved on the record.

### C. The Lien and Bankruptcy Record

The IRS argues that the DOJ's Certificate of Release of Lien 'only released the lien under 18 U.S.C. § 3613(c) and did not release the IRS's lien under 26 U.S.C. § 6321.' ECF No. 62 at 4-5. But this raises an obvious question: if there are two separate liens—one under Title 18 and one under Title 26—why did the IRS release BOTH of them in August 2025?

The IRS issued Certificates of Release of Federal Tax Lien in August 2025 for the Title 26 liens under § 6321. Exhibit D at 2. The IRS now claims this was 'erroneous' and revoked the releases in February 2026. But the IRS's own explanation doesn't make sense:

- If the debt is non-dischargeable Title 18 restitution, why did the IRS release the Title 26 liens at all?
- Why did it take the IRS 5 months (April to September 2025) to 'discover' the discharge was supposedly improper?
- Why did the IRS only reverse course after I filed an Offer in Compromise in 2026?

**The IRS's prior discharge notation, lien releases, and write-off do not override a valid statutory exception to discharge. They nevertheless form part of the Government's own account history. When combined with DOJ's earlier Certificate and the later reversal of the IRS's treatment, they support requiring the Government to identify precisely what obligation survived discharge and why.**

## VI. "SELF-EXECUTING" NONDISCHARGEABILITY DOES NOT ANSWER THE THRESHOLD QUESTION

The Government's reliance on the self-executing nature of § 523(a)(13) resolves a procedural issue, not the identity of the debt. The Court still must determine whether the

particular balance now being collected is a payment of an enforceable Title 18 restitution order.

**A. 'Self-Executing' Does Not Mean 'Self-Proving'**

Section 523(a)(13) applies by its terms to a debt "for any payment of an order of restitution issued under title 18." The Government therefore need not have obtained a pre-discharge § 523(c) judgment, but it must still establish that the disputed obligation falls within the statutory category after DOJ's later § 3613(c) certification and release.

**B. The IRS's Own Conduct Contradicts Its Position**

The IRS's prior account treatment is relevant but not dispositive:

• Certified it as unsecured in the Proof of Claim;

• Noted **'full bankruptcy discharge'** in its records on April 8, 2025;

• Released the liens in August 2025;

• Written off the balance in September 2025.

Those actions do not waive a statutory exception to discharge. They do, however, demonstrate that the Government itself treated the account differently before reversing course, which is relevant to the factual history and to any later objective-reasonableness analysis.

**C. The Discharge Order Itself Listed Criminal Restitution as an Example**

The discharge order's generic list of examples likewise does not adjudicate the character of this particular balance. The Court must apply the relevant exception to the actual obligation proven on this record.

Accordingly, "self-executing" does not mean "self-proving." If the Court determines that no enforceable Title 18 restitution obligation remained after DOJ's Certificate, § 523(a)(13) does not supply a new obligation. The Government must then identify what debt remained and what law excepted that debt from the April 8, 2025 discharge.

## VII. THE $15,706.37 IN INTEREST/ADDITIONS REQUIRES A LAWFUL STATUTORY BASIS

The criminal judgment fixed restitution at $172,770.08. The IRS later placed an additional $15,706.37 on the account. The controlling question is the statutory source of that additional amount.

Klein v. Commissioner, 149 T.C. 341, 359–62 (2017), held that § 6201(a)(4) does not authorize the IRS, merely by treating restitution "as if" it were tax, to assess § 6601 underpayment interest or § 6651(a)(3) failure-to-pay additions on a restitution-based assessment. Daugerdas addressed the separate question whether the IRS may assess and collect qualifying restitution under § 6201(a)(4), including through its own collection schedule and lien procedures; it did not disturb Klein's distinct limitation on IRS-generated interest and additions.

The Government's decision to initiate an abatement is therefore significant if the $15,706.37 was generated as Title 26 interest or additions on the restitution-based assessment. Because the amount remained on my account on August 21, 2026, the Court should require a clear accounting identifying the charge, the code sections under which it was imposed, and confirmation of whether and when it was actually removed.

## VIII. ADDITIONAL RESPONSES TO AUSA'S ARGUMENTS

### A. Section 7433 Governs Any Damages Remedy Against the IRS

The Government argues that I cannot recover damages without satisfying 26 U.S.C. § 7433's requirements. Binding Seventh Circuit authority requires that point to be taken seriously. In Kovacs v. United States, 614 F.3d 666, 673 (7th Cir. 2010), the court held that § 7433(e) is the exclusive remedy for recovering damages from the IRS for a willful violation of the § 524 discharge injunction and that the statutory prerequisites apply notwithstanding § 105.

Accordingly, this Reply does not ask the Court to bypass § 7433(e) and award damages under § 105 alone. My immediate request is for determination and enforcement of the scope of the discharge, correction of any amounts that are not legally collectible, and cessation of collection of any debt the Court determines was discharged. Any claim for monetary damages against the United States should be considered only to the extent authorized by § 7433(e) and after satisfaction of applicable exhaustion and other statutory requirements.

This correction does not resolve the merits in the Government's favor. Section 7433 addresses the remedy for damages; it does not answer the antecedent question whether the disputed obligation was discharged or whether the IRS is presently collecting amounts it lacks authority to collect.

### B. Sections 3613 and 6201 Must Be Reconciled With DOJ's Certificate

The Government correctly notes that valid Title 18 restitution receives powerful protection from bankruptcy under § 3613 and § 523(a)(13). The dispute is whether the particular balance now being collected remained such an obligation after DOJ's later § 3613(c) certification and release.

I do not contend that only DOJ personnel may ever enforce restitution or that the IRS lacks authority to collect qualifying restitution. Daugerdas confirms the IRS's authority under § 6201(a)(4), and § 3664(m) makes federal enforcement remedies broadly available. The unresolved question is what qualifying restitution remained for those enforcement provisions to operate upon after the Certificate.

The Government therefore cannot prevail merely by invoking the original restitution judgment. It must reconcile that judgment with DOJ's later certification, identify the continuing obligation, and demonstrate that the amounts now being collected fall within the statutory authority it invokes.

**C. Factual Corrections to the AUSA's Response**

The AUSA's Response contains a factual error. The AUSA states that I have filed three Chapter 13 bankruptcy cases. This is incorrect. I have filed only two Chapter 13 cases. This factual error suggests the AUSA has not carefully reviewed the record in this case.

**D. Section 6201(a)(4) Does Not Answer the Certificate Question**

The AUSA complains in a footnote on page 12 that I "does not cite or reference 26 U.S.C. § 6201 a single time in his voluminous briefing, despite the fact that the original notice of federal tax lien filed by the IRS explicitly states this is the basis for the restitution based assessments. It is clear why the debtor chose to disregard the central statute at issue in this matter."

The Government is correct that § 6201(a)(4) is central to the IRS's collection theory. Daugerdas confirms that § 6201(a)(4)(A) authorizes the IRS to assess and collect qualifying restitution imposed pursuant to 18 U.S.C. § 3556 for qualifying tax-related offenses, including

qualifying Title 18 offenses, and permits the IRS to employ its parallel Title 26 assessment and lien authority.

But Daugerdas does not resolve the materially different threshold question presented here. In Daugerdas, the taxpayer did not challenge the existence or amount of his overarching $371 million restitution obligation. Here, by contrast, the dispute concerns the legal effect of DOJ's subsequent Certificate expressly stating that the requirements of § 3613(c) "have been satisfied with respect to this judgment," followed by release of the lien arising from that judgment. Daugerdas did not involve such a subsequent DOJ certification and release.

That distinction is dispositive to the Government's reliance on § 6201(a)(4). Section 6201(a)(4)(A) authorizes assessment and collection of "the amount of restitution under an order pursuant to section 3556 of title 18." It does not independently create restitution or determine the continuing legal effect of a later DOJ certification issued under § 3613(c). The Government therefore cannot use § 6201(a)(4) to assume the very statutory predicate that is disputed here. It must first establish that, notwithstanding DOJ's subsequent certification and release, a qualifying and legally enforceable Title 18 restitution obligation remained to which § 6201(a)(4)(A) could attach.

**E. The Government's Conflicting Statements Concerning the $15,706.37**

The AUSA's Response contains another revealing contradiction. In the first few pages of the Response, the AUSA states that the interest and penalties were "abated." However, on page 19, the AUSA claims the interest is "processing." These statements are mutually exclusive—interest cannot be both "abated" (removed/cancelled) and "processing" (being calculated/deleted) at the same time.

The contradiction should be stated precisely. "Already abated" describes a completed removal; "initiated an abatement ... currently processing" describes an unfinished administrative action. The current account evidence I obtained on August 21, 2026 showed the $15,706.37 still present. The Court should therefore reject mootness.

The AUSA argues on page 23 that *'this issue is moot because the IRS has already abated the interest and penalties.'* (Response at 23). The AUSA further represents that *'[o]n July 29, 2026, the IRS initiated an abatement of $15,706.37, which is currently processing through IRS systems'* and that *'none of the interest and penalties that Debtor complains of remain on the IRS accounts.'* (*Id.*). **This representation is false. The interest has NOT been removed.**

On August 21, 2026, I contacted the IRS to verify the current status of my account and spoke with two IRS representatives: Ms. Lowe (Employee ID: 1004675764) and Lynda Latz, the bankruptcy specialist assigned to my case. Both IRS representatives confirmed that *$15,706.37 in interest is currently still showing on my 2014 tax account as of date, August 21, 2026.* This is three weeks after the AUSA claims the IRS 'initiated' the abatement.

The discrepancy between the AUSA's representation and the current state of my IRS account demonstrates that this matter is *not* moot. Whether the interest was 'initiated' for abatement on July 29, 2026 is irrelevant—it is still on my account *today*, three weeks later. The AUSA's representation that 'none of the interest and penalties...remain on the IRS accounts' is demonstrably false.

Even if the IRS completes the abatement, the accounting issue remains relevant to determining what the IRS attempted to collect and under what authority. The Court need not decide that an erroneous addition automatically proves discharge of the restitution principal; it

should determine whether the $15,706.37 was ever lawfully collectible and ensure that it is removed if not.

The Government also disputes this Court's authority to address the interest and penalty issue. At minimum, this Court has authority to determine the scope and effect of its own discharge order and to decide whether amounts the IRS seeks to collect are within or outside that discharge. The Court can also require the Government to identify the statutory character of the disputed account entries in order to resolve that bankruptcy question.

I therefore do not ask this Bankruptcy Court to modify the criminal judgment or exercise appellate jurisdiction over the sentencing court. I ask it to determine whether the amounts the IRS is collecting are restitution, separate civil tax liabilities, or unauthorized additions, because that classification is necessary to determine the effect of the bankruptcy discharge.

As to the statutory merits, Klein supplies the controlling distinction: § 6201(a)(4) authorizes assessment and collection of the restitution amount, but does not by itself authorize § 6601 interest or § 6651(a)(3) additions generated from the restitution-based assessment. The Government should identify any other statute on which it relies for the $15,706.37.

At bare minimum, the $15,706.37 presents an independent discharge-enforcement problem that the Government cannot avoid by labeling the entire post-discharge balance "restitution." The IRS's own records reflected a full bankruptcy discharge and removal of the liabilities from collection following my April 8, 2025 discharge. The IRS subsequently reversed course and restored approximately $78,000 to collection as purported restitution, while including within that account the disputed $15,706.37 in interest and penalties. That $15,706.37 was not imposed by the sentencing court as part of the restitution judgment, and the Government has

identified no order of this Bankruptcy Court or independent statutory authority authorizing its post-discharge collection. Indeed, the Government now represents that the IRS has initiated abatement of that very amount. Accordingly, even if the Government ultimately establishes that some portion of the restitution principal survived my discharge, that conclusion cannot automatically insulate the separately added $15,706.37. If that amount was neither part of the Title 18 restitution ordered by the sentencing court nor otherwise excepted from my bankruptcy discharge, the IRS's post-discharge restoration and attempted collection of that amount falls within the conduct prohibited by 11 U.S.C. § 524(a)(2). The Government must therefore establish a lawful, nondischargeable basis for the $15,706.37 independently of whatever basis it asserts for collection of the restitution principal.

If the Court determines that any portion of the post-discharge collection involved a debt actually covered by § 524(a)(2), the Court should enforce the discharge and stop collection of that amount. Any request for monetary damages against the IRS, however, is subject to § 7433(e), Kovacs, and the applicable exhaustion requirements.

**F. The Government's Alternative § 523(a)(1)(C) Theory Does Not Resolve the Threshold Question of What Liability Remained After DOJ's § 3613 Certification and Release**

The Government argues that even if the Restitution-Based Assessments are characterized as tax liabilities rather than Title 18 restitution, they nevertheless remain nondischargeable under 11 U.S.C. § 523(a)(1)(C). The Government further argues that § 523(a)(1)(C) is self-effectuating and therefore did not require the IRS to obtain a pre-discharge determination of nondischargeability. I do not dispute that § 523(a)(1)(C), when applicable, is not among the exceptions identified in § 523(c)(1) that require a creditor to obtain a pre-discharge

determination. That proposition, however, does not resolve the materially different threshold question presented here: **what legally enforceable obligation remained following DOJ's certification and release under 18 U.S.C. § 3613, and what is the legal character of the obligation the IRS presently seeks to collect?** See 11 U.S.C. § 523(a)(1)(C), (c)(1).

The Government relies upon *In re Terrell* for its contention that my conviction under 26 U.S.C. § 7206(1) establishes nondischargeability under § 523(a)(1)(C). But *Terrell* does not resolve the threshold issue presented here. In *Terrell v. Internal Revenue Service (In re Terrell)*, BAP No. WO-16-007 (10th Cir. BAP Feb. 17, 2017) (unpublished), the Bankruptcy Appellate Panel affirmed summary judgment concerning Terrell's **1997 federal income-tax liability**. Terrell's criminal conviction under § 7206(1) concerned the same 1997 return. The BAP examined the facts admitted through Terrell's guilty plea and concluded that collateral estoppel applied because the issue determined in the criminal proceeding was identical to the issue presented in the dischargeability proceeding. *Id.* at 6–10.

Thus, *Terrell* establishes that, under its particular facts, a § 7206(1) conviction concerning the same return and corresponding tax liability could have preclusive effect in a subsequent § 523(a)(1)(C) proceeding. *Terrell* did **not** address the materially different issue presented here: the legal effect of a subsequent DOJ certification under 18 U.S.C. § 3613 and release of the lien securing criminal restitution while an unpaid balance remained, followed by collection of that balance through restitution-based assessments administered by the IRS.

That distinction is critical. The Government's alternative theories presuppose the continued existence and legal character of the very obligation I ask this Court to determine. If the balance presently being collected remained **Title 18 criminal restitution**, the Government must reconcile that position with DOJ's subsequent § 3613 certification and release and explain the

statutory basis upon which the criminal restitution obligation remained enforceable notwithstanding those actions. If, alternatively, the remaining balance is properly characterized as a **Title 26 tax liability**, the Government must establish that the particular liability presently being collected is a tax "with respect to which" I made a fraudulent return or willfully attempted to evade or defeat the tax within the meaning of § 523(a)(1)(C). Section 523(a)(1)(C) contains that specific statutory requirement.

The fact that § 523(a)(1)(C) may operate without a creditor obtaining a pre-discharge determination does not itself establish the **identity, source, character, continuing existence, or amount** of the obligation to which the exception allegedly applies. Nor does that procedural principle resolve the legal effect of DOJ's subsequent § 3613 certification and release.

Accordingly, the Government's reliance upon *Terrell* and the self-effectuating nature of § 523(a)(1)(C) does not answer the antecedent question before this Court. Before determining whether § 523(a)(1)(C) excepts the disputed obligation from discharge, the Court must first determine **what obligation remained legally enforceable following DOJ's § 3613 certification and release, what legal character that obligation possessed at the time of my bankruptcy discharge, and whether the obligation presently being collected by the IRS is the same liability to which the Government's asserted exception to discharge applies.**

IX. CONCLUSION

The Government's case ultimately rises or falls on a statutory predicate it cannot avoid. Its theory of continued collection under 26 U.S.C. § 6201(a)(4)(A) depends upon the continued existence of qualifying Title 18 restitution. Section 6201(a)(4)(A) does not itself create criminal restitution, revive an extinguished restitution obligation, or independently convert a

former criminal obligation into a perpetual IRS debt. Congress authorized the IRS to assess and collect "the amount of restitution under an order pursuant to **section 3556 of title 18**." The Government therefore must establish the continuing Title 18 predicate upon which its asserted § 6201(a)(4)(A) authority depends.

That requirement is decisive here because DOJ did not merely record an unexplained release of collateral. DOJ **affirmatively certified**:

**"I hereby certify that as to the following named debtor the requirements of section 3613(c) of title 18 of the US code have been satisfied with respect to the judgment enumerated below together with all statutory additions; and that the lien for this judgment and statutory additions has thereby been released."**

Those are the Government's own words. They matter. DOJ did not state merely that it elected to stop pursuing one collection remedy. It certified that the "requirements of section 3613(c) ... have been satisfied," that the satisfaction was "with respect to the judgment enumerated below together with all statutory additions," and that the lien "has thereby been released." **The Government now acknowledges that the release was intentional** and asserts that DOJ took that action "as part of **the transfer of collection responsibility from the DOJ to the IRS**." Thus, according to the Government's own position, mistake or inadvertence does not explain the Certificate.

The Government must therefore prove what qualifying and enforceable Title 18 restitution obligation continued to exist after DOJ made that certification. It is not sufficient for the Government simply to point to the original restitution judgment. The existence of restitution before the Certificate is not the disputed issue. The critical question is its legal status afterward.

Nor can continued IRS collection itself prove that the predicate continued to exist; the collection is the conduct being challenged and cannot serve as its own statutory authorization.

Section 6201(a)(4)(A) does not fill that gap. The Seventh Circuit recently explained that Congress "conditioned the administrative assessment of restitution on whether such an obligation arose under 18 U.S.C. § 3556." *Daugerdas v. Commissioner*, No. 25-1055, slip op. at 6 (7th Cir. Mar. 30, 2026). *Daugerdas* establishes the IRS's authority to assess and collect qualifying restitution through a parallel restitution-based assessment. It does not hold that § 6201(a)(4)(A) independently creates the qualifying Title 18 obligation upon which that authority depends, and it did not involve DOJ's prior certification that § 3613(c)'s requirements had been satisfied with respect to the judgment.

The Government therefore must reconcile its present theory with the language DOJ actually used. If the Government contends that the underlying Title 18 restitution remained fully enforceable and unchanged despite DOJ's certification that § 3613(c)'s requirements "have been satisfied with respect to the judgment enumerated below together with all statutory additions," it must identify the statutory basis for that conclusion. It must explain how that certified satisfaction and resulting release left a continuing qualifying Title 18 restitution obligation capable of supplying the predicate for § 6201(a)(4)(A). Merely asserting that collection responsibility moved from DOJ to IRS does not itself answer that statutory question.

Section 523(a)(13) cannot cure the same defect. That provision excepts from discharge a debt "for any payment of an order of restitution issued under title 18." Its self-executing nature matters only if the obligation actually falls within the category Congress defined. Section 523(a)(13) cannot be used to prove its own predicate. If the Court determines that no continuing enforceable Title 18 restitution obligation remained following DOJ's § 3613(c) certification, the

Government cannot preserve subsequent IRS collection merely by continuing to call the obligation "criminal restitution."

The Government ultimately cannot avoid the circular statutory problem created by its own documents. DOJ did not merely record a ministerial lien release in November 2022; it affirmatively certified that the requirements of § 3613(c) "have been satisfied with respect to the judgment enumerated below together with all statutory additions," and released the lien arising from that judgment. Section 3613(c), however, provides that the restitution lien continues for twenty years or until the liability is satisfied, remitted, set aside, or terminated under subsection (b). The Government therefore must identify what statutory condition or authority permitted DOJ to make that affirmative certification and release while, according to the Government's present theory, the same Title 18 restitution obligation remained fully enforceable and unchanged. "Transfer of collection responsibility to the IRS" is not an event identified in § 3613(c). The Government likewise cannot escape that unanswered question merely by moving from § 3613(c) to § 6201(a)(4)(A), because § 6201(a)(4)(A) does not create restitution; it authorizes the IRS to assess and collect "the amount of restitution under an order pursuant to section 3556 of title 18." By its ordinary meaning and in the context of § 3613(c), DOJ's affirmative certification that the statutory requirements "have been satisfied with respect to the judgment" necessarily raises the conclusion that the obligation could no longer simply be presumed to remain an unchanged, qualifying Title 18 restitution obligation for purposes of § 6201(a)(4)(A). If the Government contends otherwise, it must identify the statutory basis for that result and explain precisely what "have been satisfied" meant when DOJ deliberately used those words. The Government must therefore complete the entire statutory chain: it must establish what DOJ's affirmative certification legally meant; identify the statutory authority under which DOJ issued that

certification and released the § 3613(c) lien; establish what qualifying and enforceable Title 18 restitution obligation nevertheless remained thereafter; and only then identify the statutory authority permitting the IRS to continue collecting that surviving obligation through § 6201(a)(4)(A) after my April 8, 2025 discharge. The Government cannot use § 6201(a)(4)(A) to presume the continued existence of the very qualifying Title 18 obligation that DOJ's own prior certification places directly in dispute.

At that point, the Government must identify what debt actually remained and the statutory basis upon which that debt survived my April 8, 2025 bankruptcy discharge. If the remaining obligation was a Title 26 civil tax liability, the Government must establish the particular statutory exception to discharge applicable to that liability. If it relies alternatively upon § 523(a)(1)(C), it must establish that the particular tax liability being collected independently satisfies that provision. The Government cannot alternate between Title 18 and Title 26 characterizations depending upon which characterization preserves collection while avoiding the statutory requirements attached to each.

The Government's own administration of the account demonstrates why those distinctions cannot be dismissed as theoretical. The IRS reflected the bankruptcy discharge, released its Title 26 liens, subsequently reversed course, and assessed an additional $15,706.37 in late-payment penalties concerning the 2014 restitution-based assessment. The Government then represented that the interest and penalties had "already [been] abated," while elsewhere stating that the IRS had merely "initiated an abatement of $15,706.37, which is currently processing through IRS systems." As set forth above, approximately three weeks after the stated initiation of that abatement, IRS representatives confirmed that the $15,706.37 remained attached to my 2014 account.

That record cannot be resolved merely by applying the label "criminal restitution" to every amount appearing on the IRS account. The Government must establish the legal character, statutory authority, and amount of the obligation it seeks to collect. Section 6201(a)(4)(A)'s authorization to collect restitution "as if" it were a tax does not eliminate the distinction between the restitution amount and separate Title 26 additions, and § 523(a)(13) does not transform an IRS-generated penalty into restitution merely because it appears on an account associated with a restitution-based assessment.

The required analysis is therefore straightforward. First, the Government must establish what continuing enforceable Title 18 restitution obligation remained after DOJ certified that the requirements of § 3613(c) "have been satisfied with respect to the judgment enumerated below together with all statutory additions" and stated that the lien "has thereby been released." Second, if such qualifying Title 18 restitution remained, the Government must establish the statutory basis upon which it remained enforceable and demonstrate that the amounts being collected under § 6201(a)(4)(A) correspond to that qualifying obligation. Third, if the obligation remaining after DOJ's action was instead a Title 26 civil tax liability, the Government must identify and prove the statutory basis upon which that particular liability survived my April 8, 2025 discharge. Fourth, **any additional interest, penalties, or additions must possess their own lawful statutory basis and cannot simply be absorbed into the label "restitution."**

The Government cannot prevail merely by proving that Title 18 restitution once existed. The original judgment establishes that proposition. The Government must prove that the qualifying Title 18 restitution upon which its present § 6201(a)(4)(A) and § 523(a)(13) theories depend continued to exist in legally enforceable form after DOJ certified that § 3613(c)'s requirements "have been satisfied with respect to the judgment enumerated below together with

all statutory additions" and that the lien "has thereby been released." If the Government cannot establish that continuing predicate, § 6201(a)(4)(A) **cannot independently supply it and § 523(a)(13) cannot establish it by assumption**. The Government must then identify what obligation actually remained, prove what law excepted that obligation from my April 8, 2025 discharge, and establish the statutory authority for every dollar it continued to assess or collect after that discharge.

Accordingly, I respectfully request that this Court:

1. DETERMINE the legal effect of DOJ's certification that the requirements of § 3613(c) "have been satisfied with respect to the judgment enumerated below together with all statutory additions" and that the lien "has thereby been released";

2. DETERMINE whether a continuing enforceable and qualifying Title 18 restitution obligation remained following that certification and release and, if so, identify the statutory basis upon which that obligation remained subject to collection under 26 U.S.C. § 6201(a)(4)(A);

3. DETERMINE whether the amounts presently being collected by the IRS constitute payments of a continuing Title 18 restitution order within § 523(a)(13), restitution-based assessments authorized by § 6201(a)(4)(A), separate Title 26 civil tax liabilities, or unauthorized interest, penalties, or additions;

4. DECLARE DISCHARGED any civil tax liability encompassed by my April 8, 2025 discharge for which the Government fails to establish an applicable statutory exception to discharge;

5. REJECT the Government's alternative § 523(a)(1)(C) theory to the extent the Government fails to establish that the particular Title 26 liability being collected independently satisfies that statutory exception;

6. ORDER the IRS to provide a complete and corrected accounting identifying the statutory character and basis of every amount remaining on the disputed accounts, including the $15,706.37 assessment;

7. ORDER removal of any unauthorized Title 26 interest, penalties, or additions to the extent prohibited by applicable law, including *Klein*;

8. ORDER the IRS to release or correct any lien, bankruptcy hold, assessment, or account entry to the extent it secures or reflects an amount this Court determines was discharged or otherwise is not legally collectible;

9. ENJOIN further collection of any amount this Court determines was discharged by the April 8, 2025 discharge order;

10. DETERMINE whether any post-discharge collection violated 11 U.S.C. § 524(a)(2), and preserve any claim for monetary relief against the United States to the extent authorized by 26 U.S.C. § 7433(e), subject to the applicable exhaustion, limitations, and other statutory requirements;

11. GRANT such other and further relief as this Court deems just and proper.

Dated: August 24, 2026

Respectfully submitted,

Marcus Koger, Pro Se

828 Bluff Ridge Ln

Belleville, IL 62221